May I begin? Let me call the case. Case number 2009. No worries. 2019-5016A Sebastian Domingo-Bacilio-Sebastian et al. v. William P. Barr. And you may proceed now. Thank you and may it please the court. Alex Loomis from Quinn Emanuel for Appellants Bacilio-Sebastian, Castro, and Guitemol Garcia. The central question in this case is whether the executive branch has discretion to violate the law. Appellants are all Guatemalan refugees who came to this country fleeing religious, political, and ethnic persecution. When they arrived in this country, they were granted parole as a result. The government only grants parole if there is a humanitarian need or other public benefit. But their parole rights were not respected. They were detained. They were separated from their children. And when some of them tried to complain, their parole papers were hands on a bus between detention centers. They were told later on, and the government has maintained throughout this case, that their parole papers had been revoked. But that was not true. Under binding federal regulations, parole papers can only be revoked upon written notice. So our clients sued, and they argued that the federal government failed to follow its own regulations. It also failed to give them process that they were entitled to under the Due Process Clause. The district court acknowledged this, but it did not reach the merits. It instead held that two provisions of the INA, sections 1226E and 1252A2B2, deprive it of jurisdiction over this case, because both provisions take away jurisdiction over discretionary acts of the executive. Counsel, what do you want to ask this court to do? With respect, your honor, I want this court to set aside the unlawful purported revocation of their parole. And then where does that leave you? That would leave us back in the place we were in before their parole was purportedly taken away, with parole intact. And then the government can just give you notice, and the government can just give you written notice, and that's correct? The agency might be able to do that, assuming you do not accept our due process argument. But there is a benefit in having a remand back to the agency. My question more specifically is, relief can you get that's meaningful? In other words, unless you're trying to argue that they are to be reinstated with parole status and the government can't revoke that, I don't think you're making that argument. Of course not, your honor. That's not an argument at all. We're not trying to take away the executive branch's ability to manage immigration here. Our argument is that it is a meaningful form of relief to say that the revocation of parole was unlawful and say that the agency has to consider whether or not parole should be done again in the first place. Now I understand that your honor's concerned that not receiving written notice might not seem like a big deal here, but it's the only process the regulation entitles our clients to. And I think that that process serves at least a bare bones modicum of ensuring that when DHS does decide to take away parole, it's not doing so for bad reasons, and it also creates a record that somebody who revoked parole. And we actually don't have record of either of those things in this case. And it's not, I'm not saying that this court has a right to inquire of the agency, why did you take away parole from our clients? I'm just saying that the regulation is in place to ensure that when parole is taken away, there's at least a modicum of reasoned decision-making underlying that decision. Counsel, but is habeas the right vehicle for this? It's, you know, after the Supreme Court's opinion, Justice Alito instructs us that respondent did not seek an order releasing him on the condition that he do or refrain from doing something. I don't think that you're seeking an order to be released in your case. It says what he wants is further review of this other claim. It's not a condition with which you must comply. And equally irrelevant is the practice discussed in the dissent of allowing the executive to justify or cure a defect in the detention. You, in essence, are seeking us to have a defect in the prior detention cured. And that's exactly what the Supreme Court has recently told us. This term is not available on habeas, which is the district court can't set aside an unlawful parole revocation. That's not a power in habeas corpus. Is it? Thank you, Judge Allenrod. So two responses to that. The first is even if this court accepts that Thoracicum does take away our habeas claim here, we still have other APA and mandamus plans. I want to just put that out there first. But second, with respect, I disagree with that interpretation of Thoracicum. Thoracicum wasn't about the scope of statutory habeas or scope of habeas under current federal law. It instead was about whether a jurisdiction stripping provision that is not applicable here and clearly applied to the facts of that case violated the suspension clause of the Constitution. And to assess that, the court had to go back to what habeas meant in 1789. And the court decided that then habeas only involved release from detention. Now, I accept that in almost 99% of cases, that's what habeas is limited to under federal law. But at least for the last 50 years or 60 years or so, the Supreme Court has also recognized, as does the government in this case mind, that you can use a habeas claim to challenge collateral consequences of detention. And the Supreme Court has also held for quite some time that the inability to work, the inability to hold lawful employment, even in limited forms of employment, is itself a collateral consequence of detention. And I think that's a very important point here because our clients are not allowed to have any form of lawful employment whatsoever. But what case do you have that applies habeas to an immigrant who is not being detained? Not a criminal defendant, that's a different thing. An immigrant who is not being currently detained. I know they were detained at one point, different question, now they're not detained. Point me to that case. I believe that a Racely versus Nielsen, which is a district court case in the DDC, raises that issue. I could be mistaken about that. The reason, though, that I would say that there is no legal basis to distinguish between immigrants and U.S. citizens, though, for purposes of the collateral consequence of detention, because the question shouldn't be about who the person is. Yes, there is, because the difference is an immigrant who comes here with no paperwork does not have a right to work. An ordinary U.S. citizen born here, living life and then gets put in prison and now is out. That's a different person. I'm not saying they're not entitled to certain rights and all that. I'm not being disrespectful to that. I'm simply saying those are very different pathways. And so this collateral consequences notion is a different animal when you're talking about somebody who walks in here with no rights versus someone who has those rights or no work rights. I understand, Your Honor, and I apologize. A Racely does not deal with that question. I misunderstood your question earlier. I would respectfully disagree, though, with the framing of that issue, because the Supreme Court cases that dealt with the collateral consequences of seeking employment didn't deal with cases where people were not allowed to seek any type of work whatsoever. It was about particular cases where a person could not seek a particular post in a labor union. And I don't think that there would necessarily be the same argument that U.S. citizens would have the right to seek that. And the final thing I would say to this is that regardless of whether or not we do not have the right to seek to have employment without papers, I think the point here is that the scope of habeas is a cause of action. And if we do not have the right to have papers here, that shouldn't affect whether or not our habeas claim has been mooted by the fact that we are no longer that by the fact that we are. If the habeas claim only covers detention for an immigrant, then obviously it is mooted. So the only question is the degree to which this collateral consequence world applies here and what that means. Now, let's take it one step further. You keep talking about the right to work. OK, the problem is I see it is this parole is not a right to work. It's a right to apply. For the right to work now, point me to where that's the same thing as the right to work. Well, with respect, Your Honor, and I take the point here, I would say that the right to work in itself isn't a right to guaranteed employment, which is the really substantive thing that matters. It's only the right to apply for a job and receive a job if possible. There's just one additional step removed here. But that's a big step. I mean, I could put aside that I'm currently a judge. Let's say I wasn't. And I just want to go apply at the local grocery store for a job. I don't need the permission of the United States government to do that. I just go apply. But your client, had they still been under parole, would have had to go and get a license to apply to the grocery store. Then the grocery store could turn them down. Sure. But they can't go to the grocery store and apply without that. So talk to me about why that is a right. The right to apply for the right to apply is not the same thing as just the right to apply. Well, thank you, Judge Haynes. With respect, I think two points. One is there are certain types of employment where you need a license to hold the job anyway, and you need a license from the government, and you need to go through various requirements to get it. And I think those would still be covered by the collateral consequences doctrine. At the very least, the government has not given us reason to believe that. The second thing I would say to that is just again, even if this court thinks that our habeas claim is on shakier ground, we do have other claims available here that have definitively not been. Okay, so let me ask you about that. Because I really I didn't feel like you briefed that particularly well on appeal. If we say let's assume arguendo habeas is moved. I know you don't that. Now we have to look for another theory. Point me to a case where in an immigration context, when the person is not being detained, they have been allowed mandamus review for failure to comply with a regulation, not a statute, but a regulation. So I think that that speaks to a merits issue, that's not an issue. If the argument here is that mandamus does not cover this particular type of relief, that's certainly a merits question that has not been briefed by the government on appeal. I think the point here is that our argument for mandamus. No, I mean, I'm saying you say mandamus is available jurisdictionally. I'm looking for a case where that happens. So I could study that. And so I'm asking you, where is that case? What is that case? What case do you want me to read that would show mandamus is available in this context, not should you win or lose on mandamus? Can you even bring it? Well, I think mandamus covers a cases just where people fail to follow a known legal duty. And I think that that's what our argument effectively alleges. I don't have a particular case that it has that's exactly analogous to this one. But we do have our APA claim. And there are plenty of APA claims that we in cases that we do. Okay, so point me to your best APA claim that would be again, I'm not talking about broadly. We can appeal, of course, so on. Point me to a case, of course, that is similar enough that it would satisfy the feeling that this is the right case for this to apply here. What's your best case on that APA? Of course, yeah, I think a race, a race versus Nielsen was an APA case. But again, I want to be just really clear here, the government hasn't challenged us. And neither did the district court and saying that these were they haven't, there has never been a suggestion that those that these do not provide sufficient jurisdictional fonts here. Well, counsel, I don't believe you even briefed mandamus on appeal, you complain that the government didn't argue that it didn't respond on that. But where in the world did you brief? Hey, mandamus on appeal? And then also didn't the court actually give some sort of mandamus relief when it ordered that? So the court thought it granted mandamus in some fashion by request, making them give a written notice. I don't know that you can make somebody vacate a prior order as part of mandamus. A mandamus is a command to do something, not to void something that you already did. So I'm not sure that it works anyway. But where did you even brief that? Yes, so all of our claims, all of our separate claims were dismissed on the ground that the court, the court below held that it did not have jurisdiction because of the jurisdiction stripping provisions of the INA. And those, if that is true, that apply to every single one of our claims. Page three of our brief raised the claim, raised the issue about whether or not all of our claims, whether or not the district court had jurisdiction over our claims. And then page three also says that the district court did have jurisdiction over those claims. Where do you say mandamus relief should have been granted by the district court? What do we say other way than it did? What do we say that mandamus? Oh, oh, I apologize. So why, why? So turn to the second question about why that does not cover it. I think the scope of our mandamus claim was that the was that the federal government is required to respect the initial grant of parole because the revocation of parole was legally effective in this case. You don't ever use the term mandamus and discuss whether or not it's available. Do you? So on page three, we set, we, we refer to our claims, generally the statement of the issues. We don't specifically go claim by claim because the district court didn't hold that this was an unavailable form of relief under mandamus. But jurisdiction is always a question. If the district court thought it had subject matter jurisdiction and did not, and no one said anything about it, we would still have to address it. No, this is still critical. And your response to the 28 J on that you said, Oh, well, but we still have mandamus and APA authority here or jurisdiction here. Where is that briefed? And more importantly, what case can you point me to? It's not a district court from some other circuit, some sort of semi binding precedent, of course, show us that this is a context because, you know, in immigration cases, they're very different from ordinary cases in that district courts have very little to do with them. I mean, I've been on this court for 12 years. In those 12 years, only a handful of cases involving immigrants that are not charged with a crime. So civil cases involving immigrants have been via a district court. Almost all of them are via the BIA appeal. Okay, I'm not saying there's no jurisdiction in district courts, but it's highly limited. Of course. And so point it, I'm looking for a case that is relevant, that would help me understand the parameters of any jurisdiction, the district court would have via mandamus or via APA. Well, with respect of David Haynes, I fully understand that. And I the written words of the mandamus app, and the APA jurisdictional provisions do not cover our claims, I would respectfully request the right to brief that because it hasn't been raised before are in this issue in supplementary briefing. But the reason why other district courts have not actually heard those claims is because of the jurisdiction stripping provisions of the INA. District courts did hear plenty of immigration cases, if I might just finish my answer very short answer the question. This report did used to hear quite a bit of immigration cases that Congress passed the INA with the jurisdiction stripping provisions 1226 and 1252. So as to limit the number of cases that would get there. The real question here isn't whether the text of the mandamus and APA statutes would give jurisdiction in this case. It's whether the jurisdiction stripping provisions apply here and they do not as we'll cover more on our model. Thank you. Of course, of course. You may ask another question, Judge Haynes. I just want to understand. I know you're challenging the failure to follow regulations and I understand that. Are there any statutes that you claim were not followed here in this revocation of parole context? No, I think our position is that failure to follow a regulation means that the agency is outside the scope of its statutory authority. Counsel, when you return on your rebuttal, one of the things I would ask that you would consider is in the Rasa GM that the habeas that the language that we didn't even get to that specifically talks about collateral consequences and says that you don't have the right to try to be a doctor and it can only be an architect or a pilot and that you may have the opportunity to remain in the country. There is no evidence that it was known in 1789 could be used to require the aliens to get other opportunities. And so this specifically deep dives into collateral consequences. I know you think it's not relevant for some reason, but if it is relevant, it does a specific deep dive into collateral consequences and would seem to preclude your work authorization argument. So please address that on rebuttal. Thank you. Okay. Now we'll hear from Mr. Is it Mr. San Pat? That's correct. Your honor. Good morning and may it please the court German San Pat on behalf of the federal government, the applies in this case. Petitioner's case is flawed both procedurally and substantively. Petitioners seek to invoke habeas relief as an end run around this court's decision in lower Herrera, which bars judicial review of the decision regarding the revocation of parole. As, as judge Alrod and judge Haynes both noted during Mr. Loomis's time, their stadium and the recent Supreme court decision from just about a month ago addresses habeas relief and, and create and define the scope as saying it's meant to secure one's release from unlawful detention. Petitioners have already received that relief and therefore the district court properly held that the case is moot. The court need not move any further than the issue of mootness. And as the Supreme court has defined, petitioners are seeking review of a collateral consequence by saying that they can't seek work authorization. That's what they argue. However, as judge, as judge Elrod noted during her questioning of Mr. The Supreme court explicitly addressed that issue and said that there's no right upon release to seek a form of relief, such as a surgeon being released or sorry, such as an individual who is not a surgeon to be released and then seek the ability to perform surgery. To the extent that petitioners argue that they're that they're entitled to work authorization, that is just a backdoor to, to circumvent 12, 26, eight USC, 12, 26 C which bars judicial review of the decision to revoke parole. Now, to the extent that the, that the case is not new you know, eight USC, 12, 26, he does bar review and relief that petitioner. See, let me ask you about that. Cause their whole argument is that there, and, and the earlier exchange with us was to the effect that we're not talking about the discretion to revoke the parole. We're talking about the procedure to get there. Okay. And so my question on that is, does, does it affect the jurisdiction of the district court, whether the challenge is based on a regulation or based on a statute? Does the difference between statute and regulation matter? Because the focus in the cases I've looked at has been Congress mandated this Congress mandated that, which is not true in the context of a regulation directly. I mean, they mandate that you can have these regulations, but it's a little bit different. So does that make a difference to the analysis or not? It does not your honor. And if I may just quote this court's decision in lower Herrera it said, the court said that the discretionary judgment regarding, and I quote the application of parole, including the manner in which the discretionary judgment is exercised and whether the procedural apparatus supplied satisfies regulatory statutory and constitutional constraints. Yeah. But my problem is that there has been cases since then that have arguably detracted from it, but those cases seem to be focusing on statutes. So I'm asking, since this case focuses on a regulation, do those cases have any bearing on the, the lower question, lower Herrera question here. I mean, in other words, if the government failed to follow its own regulations, but did all the statutes, does that, is that different from if it failed to follow a statute in terms of jurisdiction over an APA ask claim? Respectfully honor. I don't think it does because I do think lower Herrera still governs, but to the extent that there's an issue of, of regulation and the government violating its regulations, the issue was about the government not providing notice. But again, petitioners have received that notice. The district court ordered the government to provide notice. And that notice was filed on the, on the main docket. And so did the district court have jurisdiction to issue mandamus to issue a notice? Yes or no? Um, for that, your honor, everyone would argue, I would, I would say yes, in terms of, because mandamus is meant to, for a non-discretionary ministerial duty and the regulations require the government to issue notice, which it then did. Counsel, can you help us figure out what happened in this case? Was the original parole done incorrectly? I was trying to figure out what ground under parole they would have satisfied to have gotten parole instantly in that circumstance anyway. Um, and I, so I'm not really sure what, what ground was the parole based upon initially and the fact that it was instantaneously revoked and not ever, they were never let out. They were just transferred to a different facility tends to say that there's some kind of error at the time that the initial parole was. So do you know the facts of the case and what happened administratively? Um, sure, your honor, um, the facts are, you know, because the briefing was done so, so quickly, and because a lot of the facts weren't exactly developed before the district court, there are some gaps. What, what we do know is that the petitioners entered the United States, um, two of which were provided parole papers. Those papers are as were submitted as part of the record before the district court and are before this court. Um, to the basis for that. Um, it, I believe it, I believe they were provided parole for humanitarian purposes. Um, I would have to confirm that by looking at the parole papers exactly again, your honor. But I believe that was the reason that those, uh, that two individuals, I believe that was Basilio Sebastian and, uh, and Mr. Castro. And what about the third? Um, for Mr. Garcia, we don't have his parole papers, but he, all we have is a declaration in which he states that his, that he was provided parole papers. There's no other evidence to show that he was ever provided parole. Um, so, so that is the extent to which we have the Why weren't they then paroled and why were they just being moved to a different facility? Was that an error of the government administratively? Um, your honor, it's not very clear from the record as to why, why they were, why those decisions were made and what had happened at the outset. Um, however, again, the, the issue is whether or not petitioners received the relief that they sought through habeas, which they were released. So ultimately, even if there may have been error on behalf of the, by the government, uh, after being provided parole and then revoking parole, that all those issues are now mooted because petitioners have not only been released from custody, they have been provided the requisite notice, uh, that's, that's required under the regulation. Right. But it's unusual to have instantaneous parole, revocation, I mean, parole, and then revocation of that parole. That's, that's strange, isn't it? Um, it, it, I haven't, your honor, I haven't seen the circumstances such as these, but again, because the records not exactly developed before the district court on this issue, it is difficult to say what exactly happened. Okay. And what is the current immigrant? I know this is not one of the cases that we get from the BIA as judge Haynes pointed out earlier, but it does the record reflect what the current immigration status in the, of, of these, um, of these petitioners, or I guess they're, they're, what it is. Um, and your honor that those facts are not before the court, but if, if you'd like, I'm happy to tell the court where, where things stand currently. That's not in the record at all, what their current immigration status is. Uh, no, it's not in the, it's not in the record because again, this was a habeas petition by which petitioners were challenging. Then you don't need to tell me if it's not in the record. Okay. Um, okay. I just want to get back to, again, I don't mean to be laser focused on jurisdiction, but that is very important. Um, so they argued mandamus. We talked a little bit about that. I understand your position on it, whether I agree with it or not, but then on the question of APA, what is your position on what jurisdiction the APA? So your honor, there's two ways that I would answer that. The first is, uh, the first is that petitioners didn't really brief the APA nor the mandamus claim. So it's not, they didn't really raise the argument before this court. So any, any argument would be improper at this point. But even if those claims were to survive under the APA specifically, the APA strips courts of jurisdiction when, when Congress has explicitly stripped judicial review and for, and for decisions that are left to the agency's discretion. And the decision to revoke parole in this case falls under both of those umbrellas under eight USC 1226 E the decision to revoke parole is less, is it outside of judicial review? And they conceded that this loops us back though to the, and this is why I'm questioning regulation versus statute. It loops us back to the question of, did they follow the proper procedures? Um, they didn't violate any statute and what they did, but they arguably and clearly did violate some regulations. So then what effect does that have on the jury? Let's assume arguendo, they violated the notice and the hearing regulation. What effect does that have on the jurisdiction of the district court to hear this under an APA type scenario? There would be no jurisdiction, your honor, because again, the decision to is left to the agency's discretion is outside judicial review. And again, under lower Herrera, whether or not the procedural apparatus met statutory regulatory and constitutional constraints also bars the court from reviewing that decision. Does Jennings or, um, Zadeos affect that analysis? Uh, no, your honor. So, you know, petitioners rely on, uh, Zavidas versus Davis, to more versus Kim Jennings versus Rodriguez and Nielsen versus pre-op as saying that, uh, they affect, they affect, uh, this court's decision in lower Herrera. However, none of those four Supreme court cases have any impact on, on the court's jurisdiction or on the issue of 1226 E because all four decisions actually challenged the very legal authority that the government had to detain individuals. So specifically in Zavidas, the question was whether or not the government could detain individuals with the final order of removal after their removal may not be, uh, reasonably forcible. Um, the question in DeMore was whether or not the government could actually detain somebody through a mandatory detention under 1226 C. The question in Jennings was whether or not a bond hearing is required after six months for, for individuals that are subject to mandatory detention. In pre-op, the question was whether or not the government must detain an for them to be subject to 1226 C. We have some other cases, uh, in a different context that discussed that there's no due process rights. It's, there's not a procedural due process right to get something that's discretionary. So it's certainly not constitutional, but with it's, and it's not statutory here so that you don't. So failure to follow your process doesn't give you any rights to get relief before this court in the immigration context and other contexts in removal and, uh, in other contexts, it's, is that precedent relevant to this, to this discussion or is because it's in a removal context, not relevant. Um, it, it may be relevant, your honor. Um, the thing is, you know, questions of removal are, are done, are reviewed in a completely different, uh, through a completely different statutory scheme than, than habeas or challenging once detention. But again, there is, you know, there is no due process right to some form of discretionary benefit. And you know, that, uh, to that, I would cite to, um, Hadvani versus Gonzalez, which is, uh, 445 F3D 798. Um, where the court held, there is no due process, right. To, uh, to some sort of discretionary benefit. Um, and so there's no due process, right. To make them do the process correctly that you don't, that doesn't give you any substantive right in a court. It doesn't, it doesn't give the substantive right to the benefit, but the procedure, right. The only, if there is any remedy, the only remedy would be, um, would be to extra process. I'm sorry. Judge Higginbotham has dropped off. Should I, that's good that you noticed that, uh, Pam, can we try to get judge Higginbotham on and just let's hold the time for a minute. You lost three or four seconds and I'll give them back to you if you need them later, but let's just sit and wait for just a moment. And we'll, um, we'll wait there. He is judge Higginbotham. Our esteemed colleague is back with us now, and we will proceed with Mr. Sempat's argument. Um, your honor, did I, did I answer your, uh, your outstanding question? About due process. Yes. I, I think that you've answered as well as what we have here. Okay. All right. Well, um, your honor, uh, ultimately petitioner's challenge here is, is, is a habeas petition and which is meant to seek review of one's unlawful detention. And all they do is they seek, uh, to challenge the manner in which they were released. And, um, under the Supreme court's decision in Thursidgium just, uh, just a month ago, that relief is not proper. So, uh, we would, the government would ask that this court affirm the district court's decision, uh, dismissing the cases. If there are no further questions from the bench, then I have one other question dismissed for one of jurisdiction or not. I'm sorry, your honor, you cut out just a little bit. We should, how should we rule? What relief you want is that you want to affirm or to dismiss for one of jurisdiction? So in the district court dismissed for mootness, so the, in the court may, may, uh, affirm the district court's dismissal for mootness or dismiss and dismiss the remaining claims for lack of jurisdiction. What would you, what do you have here is, um, it's putting aside that the dance on, on the habeas, um, the habeas does have a far reach. Um, and not in that does not necessarily address the immigration status, et cetera. But, uh, the, uh, assuming all of that to one side, they insist that the, you have a, a, um, and then the burden of the pose of whatever, um, in the collateral consequence collateral consequence, you go to that thing only with consequence. The only collateral consequence here is a, is, is, is really, uh, at depends upon the discretion of the government itself. Um, that, why isn't that an answer to the habeas and unavailability of habeas without getting into the more, far more complex and staking area of habeas in general and the habeas. Um, well, your honor, the, the idea of whether or not individuals may seek employment is not proper for habeas review. And, you know, to the extent that there are certain cases, um, judge Haynes, you know, talked about this during Mr. Loomis. It's kind of messing up right now, but we'll certainly take about that. We'll have an opportunity to ask his question as soon as audio is working correctly. But I think maybe he's asking why don't we just resolve it? If there's no, no employment, um, because it's discretionary that even if you could get some collateral consequences in habeas, but this one is not available. Um, and the court may, may do that because again, this is a, this is a manner in which petitioners have brought their it, but before we even get there, it would have to set, the court would have to say that the decision to revoke parole is reviewable because the employment is connected with the government's decision to revoke parole. And that's a decision that's unreviewable. So it would be a jurisdictional question for sure. Before we even get to it, let's see if we can hear you again so that you can ask your question. Uh, you may be frozen. Oh, here you are. Well, they, um, my, my sense is that it's simpler than it is. Your honor, I'm sorry. I don't know if anyone else is having these issues. We're, we're having these issues. Okay. So he said, he thinks it's simpler than what we're being discussed. But I, then after that, I cut out. So because what he's saying is that the collateral consequences is discretionary. In other words, in order it, so let's say we gave relief, the parole would only give them the right to ask for the right to seek a job and that itself would be discretionary. So what, uh, I don't know if I'm summarizing him. No, I understood your honor. And I, and I think that that's correct is that what they're seeking is ultimately seeking is a form of discretionary relief that would then lead to a form of discretionary relief. Okay. Let's let judge Higginbotham try to ask any question he has now. And let's just, we're going to sit and wait and see if we can hear him. No, I don't have any questions. Okay. Uh, if there are no further questions, the government restaurant is free. Okay. Thank you very much. Mr. Loomis, do you have rebuttal? Yes, I do. Uh, whenever there are a few points I want to address, the first is this point about thoracic and the paragraph about the collateral consequences doctrine. I would simply restate what we said in the 28 K letter, which is that thoracic gum is not about the scope of current habeas under federal law when there would otherwise be habeas jurisdiction. It instead is about what the scope of habeas was in 1789. And indeed that very paragraph has ends by saying that the scope of habeas in 1789 did not cover collateral consequences, but the Supreme court has held. And that's relevant here. They looked at the 18th, 1789 is the start date because the question wasn't whether or not you could bring a habeas claim there, but instead whether Congress suspension of habeas violated the suspension clause. And to figure that out, it had to look at whether or not this would have violated habeas in 1789. I think if we're going to read, we should be very careful about reading thoracic gum as holding that as overruling the collateral consequences doctrine. Now, with regard to judge Hickenbotham's question and the question that others have raised on this, that was a thrust of my question. That was the stress of my observation. Because I think, I tend to read the Supreme court's decision that as you're arguing it, and I'm suggesting to you that that doesn't get you home. Of course. Because that, because all that does is get you back into the, assume that there is a, just assume of arguendo here that, that there is habeas available and that's, that's a track you might run on. The difficulty with that is that, do you have collateral consequences? And it begs the question to say, well, the collateral consequences is I was denied the procedural right. Of course. Et cetera. They, and the difficulty with that is that you had, there was a holy discretionary at that juncture, then discretion comes in. The only thing you had was the discretion with not granting you. In other words, it's difficult for me to, I think the collateral consequences doctrine itself goes a long way toward answering this. But I put that to you and tell me why that's not so. Well, thank you, Dr. Higginbotham. With respect, I don't think it goes all the way towards answering it because I think there would still be a collateral consequence. If let's say a person was permanently prohibited from ever having government employment, even though government hiring would presumably be discretionary as well. I don't think, I think the point of mootness after all is about ensuring that there is somebody retains a concrete interest in this case. And I think we shouldn't be deprived of his note as, as, as, as notice of the termination of the right. Are you given, you, you've given the notice and then where are you? So with respect, you can call it a jurisdiction, whatever label you want to put on it. With respect to Higginbotham, I don't think we were deprived of notice. I think that was a procedural defect. The agency was required to follow a certain procedure when revoking parole, and it failed to follow that procedure. And if you fail to follow a mandatory procedure, say Congress has a procedure when passing laws, bicameral is in presentment. If it fails to follow that what they enacted is not a law. The agency here had a mandatory procedure. Therefore, what it did was not a lawful agency action. Now with regard to the broader questions about jurisdiction, I think my learned friend, Mr. Sampa agree that the real jurisdictional issues here comes down to whether the jurisdiction stripping provisions apply here because courts did use to grant APA relief in the immigration context. I believe the concurrence in Jennings versus Rodriguez recognized that the only reason they don't anymore is because the jurisdiction stripping provisions block most such challenges. Those do not apply here though. Loa Herrera had its language. The district court distinguished between an unlawful manner of exercising discretion and exceeding the authority, but a city of Arlington recognizes there is no distinction. Anytime an agency acts unlawfully, it has exceeded its authority. Now as to the point raised about exceeding the scope of a regulation, and if I might just finish this point very briefly, Your Honors, if that's all right. Yes. Thank you. Thank you, Judge Alron. In terms of the question about whether this might fall within Loa Herrera because we were simply arguing that somebody violated a regulation here, I would point out first that any language in Loa Herrera there is itself dicta because that was about a constitutional challenge to the scope of authority. I would second point out that under the Accardi principle, anytime an agency violates the that itself is exceeding the scope of its authority, and the written letter here did not cure it because under Accardi there was supposed to be a remand back to the agency. That did not happen. It was a remand to the U.S. attorney. This court still does not know that anybody with lawful authority revoked parole or whether it was done with any plausible order. We thank the court for its time and urge for this court to reverse. Thank you. We have your and we appreciate the good argument on both sides. Thank you. Thank you, Your Honor. The court will take a 10-minute recess before considering the third case for today. Thank you.